| | |
|---|---|
| JAMES DUMAS | CIVIL ACTION |
| VERSUS | No.: 17-1025 |
| ST. TAMMANY PARISH FIRE DISTRICT NO. 3, ET AL. | SECTION: "J"(1) |

## ORDER & REASONS

Before the Court is Defendants'[1] *Rule 12(b)(6) Motion to Dismiss* **(R. Doc. 14)**. Plaintiff, James Dumas, filed an opposition (R. Doc. 18) thereto, and Defendants filed a reply memorandum (R. Doc. 21) in response. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART** and **DENIED IN PART.**

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff, James Dumas, is a firefighter at St. Tammany Parish Fire District No. 3, which generally serves Lacombe, Louisiana.[2] In 2012, some of the firefighters at District No. 3 formed a labor union, of which Plaintiff is the vice-president. In May 2016, the union submitted a letter to District No. 3's Civil Service Board ("CSB") expressing a "vote of no confidence" in Fire Chief Patrick Sicard ("Sicard"), and further alleged that Sicard violated

---

[1] St. Tammany Parish Fire District No. 3, and Fire Chief Patrick Sicard and Assistant Fire Chief Scott Lober, in their personal and official capacities.
[2] The parties do not dispute the general facts which form the basis of this lawsuit.

several provisions of civil service law, Louisiana Revised Statute § 33:2560, including failing to perform the duties of his position by understaffing ambulance operations and fire protection. The letter further complained of Sicard's discourteous and offensive behavior, which included allegedly posting a picture of himself wearing a "Hitler mustache" while performing the "Heil Hitler salute," performing the salute in person, using racial slurs, and using sexually explicit innuendos to disparage the union. In response to the union's letter, the CSB opened an investigation into Sicard's behavior and scheduled a disciplinary hearing for May 26, 2016. Between March 24, 2016 and May 12, 2016, Plaintiff had Facebook conversations with Rick Franzo, the president of a local community group called Concerned Citizens of St. Tammany, and Cindy Rester, a member of Concerned Citizens of St. Tammany. Plaintiff expressed his concern about Sicard's alleged racism and incompetence as Fire Chief to Franzo and invited both him and Rester to Sicard's public disciplinary hearing.

In June 2016, the CSB concluded its disciplinary investigation. Sicard's punishment was a one-day suspension and a mandate to attend sensitivity training. On July 20, 2016, Assistant Fire Chief Scott Lober ("Lober"), who was acting as Fire Chief in Sicard's absence, issued Plaintiff a notice of investigation alleging that Plaintiff's communication with Franzo and Rester violated Louisiana Revised Statute § 33:2560 and District No. 3's

policies relating to conduct and behavior of personnel. Plaintiff alleges that the notice specifically alleged that Plaintiff was insubordinate, aired grievances outside of the chain of command, and engaged in communications that had the potential to bring public reproach to the department. District No. 3's Disciplinary Investigation Committee concluded its investigation of Plaintiff and recommended that he be suspended for five shifts without pay. Ultimately, Sicard accepted this recommendation and issued Plaintiff a five-shift suspension, without pay. Plaintiff appealed his suspension to the CSB, but the suspension was upheld.

On February 6, 2017, Plaintiff filed this lawsuit against St. Tammany Fire District No. 3 and Sicard and Lober in their official and individual capacities. Plaintiff asserts three claims: (1) First Amendment retaliation for Plaintiff's exercise of his right to freedom of association with the union; (2) First Amendment retaliation for Plaintiff's exercise of his First Amendment right to freedom of speech; and (3) Plaintiff alleges that Defendants took action against him for exercising his right to associate and self-organize under La. Rev. Stat. § 23:822. On April 3, 2017, Defendants filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants move to dismiss only some of Plaintiff's claims. Specifically, Defendants move to dismiss Plaintiff's First Amendment freedom of association retaliation claim against Lober in his official and individual

capacity, Plaintiff's First Amendment freedom of speech retaliation claim against all Defendants, and Plaintiff's state law claim to the extent that it asserts a claim for monetary damages.[3] Plaintiff argues that Defendants' motion should be denied in its entirety. Defendants' motion is now before the Court on the briefs and without oral argument.

<u>**PARTIES' ARGUMENTS**</u>

**1.  Plaintiff's First Amendment Freedom of Association Retaliation Claim against Defendant Lober**

    **a.  Defendants' Arguments**

Defendant Lober argues that in order to prevail on a First Amendment freedom of association retaliation claim, Plaintiff must demonstrate that he has suffered an adverse employment action. Lober argues that the only specific factual allegation against Lober is that he issued Plaintiff a notice of investigation on July 20, 2016. Lober contends that the notice of investigation is not an adverse employment action.[4] Lober further argues that even if the issuance of the notice of investigation was an adverse employment action, he is entitled to qualified immunity. Lober asserts that Plaintiff cannot show that the law was clearly established at the time that issuing the notice of investigation

---

[3] R. Doc. 14-1 at 25.

[4] *Id.* at 6 (citing *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000); *Ortego v. Dep't of Transp.*, No. 13-836, 2014 WL 12521695, at *6 (E.D. La. Feb. 18, 2014)).

was an adverse employment action. For these reasons, Lober argues that Plaintiff's First Amendment freedom of association retaliation claim against him should be dismissed.

    **b.   Plaintiff's Arguments**

Plaintiff argues the issuance of the notice of investigation is an adverse employment action. Plaintiff contends that the proper standard to determine whether a public employee has suffered an adverse employment action is whether a reasonable employee would have found the challenged action materially adverse.[5] Further, while Plaintiff's complaint does not address Defendants' qualified immunity defenses, Plaintiff argues that Lober is not entitled to qualified immunity. Plaintiff contends that he must only show that his right to engage in free speech and association were clearly established at the time of the challenged conduct. Because freedom of speech and association are two clearly established rights, Plaintiff argues that he has satisfied his burden at this stage of the proceedings.

**2.   Plaintiff's First Amendment Freedom of Speech Retaliation Claim against All Defendants**

    **a.   Defendants' Arguments**

Defendants contend that Plaintiff's First Amendment freedom of speech retaliation claim should be dismissed because

---

[5] R. Doc. 18 at 14 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Plaintiff's speech was not primarily on a matter of public concern.[6] Specifically, Defendants argue that the content of the speech at issue in this case is not primarily a matter of public concern, the form of the speech at issue was primarily private, and the context of the speech concerned an employment grievance. Accordingly, Defendants argue that the subject speech is not protected, and this claim should be dismissed as to all Defendants.

Defendants Lober and Sicard argue that they are entitled to qualified immunity against Plaintiff's freedom of speech claim. They argue that Plaintiff cannot show that the law was clearly established that Plaintiff's speech primarily involved a matter of public concern. Thus, Lober and Sicard argue that Plaintiff's freedom of speech retaliation claim against them in their individual capacities should be dismissed. Additionally, Defendant Lober argues that Plaintiff's freedom of speech retaliation claim against him should be dismissed because Lober did not take an adverse employment action against Plaintiff.

**b.  Plaintiff's Arguments**

Plaintiff argues that his First Amendment freedom of speech retaliation claim should not be dismissed. Although noting that his speech is a mix of public and private speech, Plaintiff argues

---

[6] Defendants make clear that their "motion only addresses the public concern requirement. It does not address the 'speech as a citizen' requirement or other requirements for First Amendment protection of public employee speech." R. Doc. 14-1 at 12.

that his speech addressed a matter of public concern and is entitled to protection. Plaintiff further contends that Sicard and Lober are not entitled to qualified immunity. Plaintiff argues that he has pleaded sufficient facts to establish that Sicard and Lober violated a constitutional right that was clearly established at the time of the challenged conduct. Specifically, Plaintiff argues that he must only show that his right to engage in free speech was clearly established. Accordingly, Plaintiff argues that his claims against Defendants should not be dismissed, and that they are not entitled to qualified immunity.

**3.    Plaintiff's State Law Claim**

     **a.    Defendants' Argument**

Defendants only argue that to the extent Plaintiff seeks monetary damages for the alleged violation of Louisiana Revised Statute § 23:822, this claim for monetary damages should be dismissed. Defendants contend that the statute does not create a private cause of action entitling Plaintiff to monetary damages.

     **b.    Plaintiff's Arguments**

Plaintiff argues that he seeks injunctive relief pursuant to Louisiana Revised Statute § 23:822. Plaintiff contends that he seeks an injunction preventing Defendants from violating this law in the future. Therefore, Plaintiff argues that this claim should not be dismissed.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true

legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

<u>**DISCUSSION**</u>

1. **Plaintiff's First Amendment Freedom of Association Retaliation Claim against Defendant Lober**

Defendant Lober argues that Plaintiff's First Amendment freedom of association retaliation claim against him should be dismissed, because, in the context of First Amendment retaliation claims, the issuance of a notice of investigation is not an adverse employment action. Plaintiff argues that the issuance of the notice of investigation is an adverse employment action in violation of Plaintiff's First Amendment freedom of association rights.

"In order to state a claim for retaliation based on the First Amendment right to freedom of association, a plaintiff must show: (1) he suffered an adverse employment action, (2) his interest in 'associating' outweighed the [employer's] interest in efficiency, and (3) his protected activity was a substantial or motivating factor in the adverse employment action." *Caleb v. Grier*, 598 F. App'x 227, 237 (5th Cir. 2015) (quoting *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002)). Plaintiff argues that the appropriate standard to determine whether an employee has suffered an adverse employment action is whether "a reasonable employee would have

found the challenged action materially adverse, which means it well might have dissuaded a reasonable worker from engaging in the protected conduct." Plaintiff cites to *Burlington Northern & Santa Fe Railway Co. v. White* in support of this position. In *Burlington*, a Title VII discrimination case, the Supreme Court rejected the standards used by several Courts of Appeals limiting an adverse employment action to "ultimate employment decisions." 548 U.S. 53, 67 (2006). The Supreme Court adopted a new formulation to demonstrate retaliation in the Title VII context: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which *in this context* means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (emphasis added) (quoting *Rochon v. Gonzalez*, 438 F.3d 1211 (D.C. Cir. 2006)). It is clear that the *Burlington* standard applies in Title VII cases,[7] but, "[the Fifth Circuit] has not yet decided whether the *Burlington* standard for adverse employment actions also applies to First Amendment retaliation cases." *See Gibson v. Kirkpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2013) (*Gibson I*), *vacated and remanded on other grounds*, *Gibson v. Kirkpatrick*, 134 S. Ct. 2874 (2014) (*Gibson II*));[8] *see also DePree v. Saunders*, 588 F.3d 282, 288 (5th

---

[7] *See Coffman v. Alvin Cmty. Coll.*, 642 F. App'x 472, 478 (5th Cir. 2016) (applying *Burlington* standard in Title VII retaliation case).
[8] The Supreme Court reversed and remanded *Gibson I* and instructed the Fifth Circuit to consider *Lane v. Franks*, 134 S. Ct. 2369 (2014), which primarily addressed whether speech was on a matter of public concern.

Cir. 2009); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 566 (W.D. La. 2014) ("The Fifth Circuit has yet to extend the 'materially adverse' standard of *Burlington Northern* to employment-related retaliation provisions brought for Constitutional violations."); *Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 629 (S.D. Tex. 2014) (noting that the Fifth Circuit has not decided whether the Title VII standard for adverse employment actions established in *Burlington* applies in First Amendment retaliation claims).

Because the Fifth Circuit has not held otherwise, the Court finds that the standards articulated in *Breaux v. City of Garland* and *Benningfield v. City of Houston* are the appropriate standards to determine whether a public employee has suffered an adverse employment action in the context of a First Amendment retaliation claim.[9] *See Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (unpublished) ("[The Fifth Circuit] takes a 'narrow view of what constitutes an adverse employment action. . . .") (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th

---

[9] Plaintiff cites to *Thomas v. Kent*, 401 F. App'x 864 (5th Cir. 2010) which he argues proves that the Fifth Circuit has adopted the *Burlington* standard for adverse employment actions in First Amendment retaliation cases. However, in *Thomas*, the plaintiff did not assert a First Amendment retaliation claim. Rather the plaintiff asserted a Title VII retaliation claim. *Id.* at 864-66. Accordingly, *Thomas* is inapplicable to this case to the extent that Plaintiff argues the Fifth Circuit has adopted *Burlington* as the proper standard for adverse employment actions in First Amendment retaliation cases. The Fifth Circuit's most recent First Amendment retaliation case discussing adverse employment actions and the *Burlington* standard is *Gibson I*, which clearly stated that the Fifth Circuit has not yet decided whether the *Burlington* standard for adverse employment actions also applies to First Amendment retaliation cases.

Cir. 2000)); *Benningfield v. City of Houston*, 157 F.3d 369, 376
(1998) (noting that the Fifth Circuit has declined to expand the
list of actionable adverse actions, even though some may have a
chilling effect on the exercise of free speech). *Benningfield*, a
First Amendment retaliation case, held that "[a]dverse employment
actions are discharges, demotions, refusals to hire, refusals to
promote, and reprimands." 157 F.3d at 376. Similarly, in *Breaux*,
also a First Amendment retaliation case, the Fifth Circuit held
that the following actions are **not** adverse employment actions:
mere accusations or criticisms,[10] investigations,[11] psychological
testing,[12] false accusations,[13] and polygraph examinations that do
not have adverse results for the plaintiff.[14] 205 F.3d at 157-58
(emphasis added). More specifically, in *Breaux*, the plaintiffs
alleged that they suffered an adverse employment action when their
superior ordered an internal investigation after the plaintiffs
made certain public allegations. 205 F.3d at 158. The Fifth Circuit
held that "investigating alleged violations of departmental
policies . . . are not adverse employment actions."[15] *Id.*

---

[10] *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997).
[11] *Pierce v. Tex. Dep't of Crim. Justice, Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).
[12] *Benningfield*, 157 F.3d at 376.
[13] *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999).
[14] *Pierce*, 37 F.3d at 1150.
[15] Plaintiff's alleged adverse employment action in this case and *Breaux* are alike, which is even more reason to apply the adverse employment standard articulated therein without clear directive from the Fifth Circuit to the contrary.

Here, Plaintiff alleges that he suffered an adverse employment action when Lober issued the notice of investigation into Plaintiff's communications with Franzo and Rester. Plaintiff further alleges that the investigation was to decide whether such communication violated Louisiana civil service law or District No. 3's policies.[16] As to Lober, Plaintiff only alleges that the internal investigation was an adverse employment action. But, as explained above, even accepting Plaintiff's allegations as true, "internal investigations do not constitute adverse employment actions" in the context of First Amendment retaliation claims in the Fifth Circuit. *Ortego v. Dep't of Transp.*, No. 13-836, 2014 WL 12521695, at *6 (E.D. La. Feb. 18, 2014) ("Internal investigations do not constitute adverse employment actions.") (citing *Breaux*, 205 F.3d at 158-61).[17] Accordingly, Plaintiff's First Amendment freedom of association retaliation claim against Defendant Lober must be dismissed. *See Jackson*, 997 F. Supp. 2d at 649 (dismissing the plaintiff's First Amendment retaliation claim on a Rule 12(b)(6) motion to dismiss where the plaintiff failed to state a claim that she suffered an adverse employment action under the Fifth Circuit's standards).[18]

---

[16] R. Doc. 1 at 5.

[17] *Ortega* was decided approximately eight years after *Burlington* but still cited to *Breaux* for the position that, in the context of First Amendment retaliation claims, internal investigations do not constitute adverse employment actions.

[18] Because the Court has determined that the internal investigation was not an adverse employment action, the Court does not reach the issue of qualified immunity on this claim as to Lober. *See Jackson*, 997 F. Supp. 2d at 650.

**2.  Plaintiff's First Amendment Freedom of Speech Retaliation Claim against All Defendants**

To succeed on his First Amendment freedom of speech retaliation claim, Plaintiff must show that "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public service; and (4) the speech precipitated the adverse employment action." *Rodriguez v. City of Corpus Christi*, No. 16-41004, 2017 WL 1476877, at *2 (5th Cir. Apr. 25, 2017) (quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)). Here, Defendants only argue that Plaintiff did not speak on a matter of public concern.[19] Whether speech addresses a matter of public concern is a question of law to be resolved by the court. *Id.* (citing *Graziosi v. City of Greenville, Miss.*, 775 F.3d 731, 736 (5th Cir. 2015)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Public concern is something that is subject of legitimate news interest. *Marceaux v. Lafayette City-Par. Consol. Gov.*, 921 F. Supp. 2d 605, 634 (W.D. La. 2013) (citing

_____

[19] R. Doc. 14-1 at 12 n.27.

*Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378, 382 (5th Cir. 2006)). It is well-established "that speech relating to official misconduct or racial discrimination almost always involves a matter of public concern." *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008). Moreover, "speech 'that potentially affects public safety relates to the public concern.'" *Davis v. Allen Par. Serv. Dist.*, 210 F. App'x 404, 410 (5th Cir. 2006) (quoting *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 373 (5th Cir. 2000)).

Plaintiff's complaint alleges two separate instances of speech were on matters of public concern. First, Plaintiff alleges that the May 2016 union letter was on a matter of public concern. Second, Plaintiff alleges that his communication with Rick Franzo and Cindy Rester was on a matter of public concern. The Court shall address these two instances of speech in turn.

### a. May 2016 Union Letter

Plaintiff alleges that the May 2016 union letter stated that the union had taken a "vote of no confidence" in Sicard, and that Sicard violated Louisiana civil service law,[20] by failing to perform the duties of his position and acting in a discourteous or wantonly offensive nature.[21] Plaintiff alleges that the union letter included the following examples of misconduct: (1) Sicard

---

[20] La. Rev. Stat. § 33:2560.
[21] R. Doc. 1 at 5.

posted a picture of himself wearing a Hitler mustache while performing the Heil Hitler salute, (2) Sicard performed the Heil Hitler salute in person, (3) Sicard used racial slurs, (4) Sicard used sexually explicit innuendos to disparage the union, and (5) Sicard mismanaged the staffing of ambulance operations and fire protections.[22]

### i. Content

The Court finds that Plaintiff has sufficiently alleged that the content of the May 2016 union letter was on a matter of public concern. The content of speech concerns a matter of public concern "[i]f releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance. . . ." *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001). Much of the May 2016 union letter addresses an employment grievance, e.g., racial slurs and inappropriate gestures by a superior. However, Plaintiff's complaint also alleges that Sicard mismanaged the staffing of ambulance operations and fire protections. Accordingly, the May 2016 union letter contains "mixed speech," i.e., speech involving matters of public concern as well as employees' private, personal interests. *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 825-26 (5th Cir. 2007). Further, even though the allegation of understaffing is one of

---

[22] R. Doc. 1 at 5.

several statements in the union letter, "even a mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech." *Gibson II*, 838 F.3d at 485 (quoting *Stotter*, 508 F.3d at 826). Assuming the allegation that Sicard mismanaged the staffing of ambulance operations and fire protections is true, as the Court must, understaffing of ambulance operations and fire protections potentially affects public safety and therefore relates to a matter of public concern. *Davis*, 210 F. App'x at 410; *see also Moore v. City of Kilgore, Tex.*, 877 F.2d 364, 370 (5th Cir. 1989) ("The public, naturally, cares deeply about the ability of its Fire Department to respond quickly and effectively to a fire. If staffing shortages potentially threaten the ability of the Fire Department to perform its duties, people in the community want to receive such information."). Although scarce, Plaintiff's reference to the understaffing of ambulance operations and fire protections is sufficient at this stage of the proceedings to demonstrate that the content of Plaintiff's speech addressed a matter of public concern. *Cf. Stotter*, 508 F.3d at 826 (finding a single sentence buried within a four-page memo discussing the alleged misuse of benefits was insufficient to bring speech within the protected realm of the First Amendment). Accordingly, this factor weighs in favor of finding that Plaintiff's speech was on a matter of public concern and entitled to First Amendment protection.

###     ii.        Context

The Court finds that the context of Plaintiff's May 2016 union letter is appropriately characterized as private speech rather than public speech. Speech is made in the context of a public concern if made "against a backdrop of widespread debate in the community" rather than "solely in furtherance of a personal employer-employee dispute." *Gibson II*, 838 F.3d at 486-87. "The audience before whom the employee speaks and whether the employee speaks in response to an invitation may also be relevant to an analysis of the context in which an employee's speech is offered." *Salge*, 411 F.3d at 187 (internal citations omitted). "Typically, an employee speaks in furtherance of his personal employer-employee dispute when he discusses personnel matters directly impacting his job or criticizes other employees or supervisors' job performance." *Id.*

Plaintiff's May 2016 union letter was addressed to the Civil Service Board to detail why the union had no confidence in Sicard as Fire Chief. As Fire Chief, Sicard is considered a classified civil service employee. La. Rev. Stat. § 33:2541(A)(1). Upon written request, the Civil Service Board must investigate the conduct and performance of any classified civil service employee, render judgment, and order appropriate action, if any, be taken. La. Rev. Stat. § 33:2560(C). As vice-president of the union, Plaintiff aired grievances about Sicard's behavior to the Civil

Service Board which is capable of reprimanding Sicard, which in fact it did. Because Plaintiff's grievance was internal and only to Sicard's supervisory authority, this suggests that the speech was private in context, rather than public. *See Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) (suggesting that if a public employee only takes his concern up the chain of command then it is in the context of an employee-employer dispute and private, rather than public speech); *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999). The May 2016 union letter was not in furtherance of "widespread community debate," but was merely submitted to the Civil Service Board in an attempt to seek disciplinary actions against Sicard. This speech was primarily in furtherance of an employer-employee dispute regarding dissatisfaction with Sicard's behavior toward other employees. Because the May 2016 union letter contained mixed-speech, and the context of Plaintiff's speech was private, this factor weighs heavily against finding that Plaintiff's speech was on a matter of public concern and is entitled to First Amendment protection. *See Gibson II*, 838 F.3d at 487 ("In mixed speech cases . . . [the Fifth Circuit] weigh[s] context and form 'more heavily.'").

**iii.    Form**

Finally, the form of Plaintiff's May 2016 union letter was private, rather than public. Plaintiff's complaint only alleges that the May 2016 union letter was sent to the Civil Service Board.

As explained above, the Civil Service Board is essentially the highest chain of command when seeking disciplinary action of a classified civil service employee. Plaintiff does not allege that the union letter was distributed publicly by newspaper or media nor to the citizenry at large. Thus, the form of the May 2016 union letter was private. *See Chavez v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664, 676 (5th Cir. 2005) (finding form of speech was public where the plaintiff did not seek to distribute flyers to the press or the citizenry at large outside of the school district). Once again, because this is a mixed-speech case, the private form of Plaintiff's speech weighs heavily against finding that Plaintiff's speech was on a matter of public concern. *See Gibson II*, 838 F.3d at 487.

### iv.        Summary

After balancing the content, context, and form of the May 2016 union letter, the Court finds that the letter was primarily private in context and in form. Therefore, the May 2016 union letter was not on a matter of public concern and is not entitled to constitutional protection. Plaintiff's First Amendment freedom of speech retaliation claim against all Defendants is dismissed as to the May 2016 union letter.[23]

---

[23] Additionally, Plaintiff's First Amendment freedom of speech retaliation claim as to the May 2016 union letter must be dismissed against Defendant Lober, because Defendant Lober's issuance of a notice of investigation does not constitute an adverse employment action. *See supra*, Section (1). And, to assert

**b.** **Plaintiff's Communications with Rick Franzo and Cindy Rester**

Plaintiff's complaint alleges that his communication with Rick Franzo and Cindy Rester addressed a matter of public concern and is constitutionally protected. Plaintiff's complaint alleges that he invited Franzo and Rester, members of the Concerned Citizens of St. Tammany, to attend Sicard's disciplinary hearing. Further, Plaintiff alleges that he expressed his concerns to Franzo about Sicard's alleged racism and incompetence as Fire Chief and showed him a picture of Sicard performing the Heil Hitler salute. As to Rester, Plaintiff's complaint alleges that he "initiated communications" with her, invited her to Sicard's disciplinary hearing, and later thanked her via text message for attending.

**i.** **Content**

The content of Plaintiff's conversation with Franzo and Rester contained "mixed speech." But, in total, the content of the conversations were similar to that which was outlined in the May 2016 union letter. Thus, the Court finds that Plaintiff has sufficiently pleaded that the content of Plaintiff's communication with Franzo concerns a public matter, which weighs in favor of finding that Plaintiff's speech with Franzo was on a matter of public concern and is entitled to First Amendment protection. *See*

a First Amendment retaliation claim, a plaintiff must demonstrate that she suffered an adverse employment action. *Tregre*, 787 F.3d at 325.

*Davis*, 210 F. App'x at 410; *Moore*, 877 F.2d at 370. While Plaintiff's complaint does not allege specific facts as to the exact content of his communication with Rester, it is reasonable to infer that he invited her to Sicard's disciplinary hearing and communicated the same reasons expressed to Franzo. *See U.S. ex Rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678) (noting that courts are permitted to draw reasonable inferences in determining whether a plaintiff has alleged a claim that is plausible). Accordingly, viewing the allegations in favor of Plaintiff, the Court finds that Plaintiff's complaint has alleged sufficient facts to infer that Plaintiff's communication with Rester concerned a matter of public concern, which weighs in favor of finding that Plaintiff's speech with Rester is entitled to First Amendment protection. *See id.*

### ii. Context

The Court also holds that the context of Plaintiff's speech to Franzo and Rester is appropriately characterized as public, rather than private. "Speech on a matter of public concern 'need not be made before a public audience, although it may relate to the public concern if it is made against the backdrop of public debate.'" *Salge*, 411 F.3d at 187. The context of Plaintiff's speech to Franzo and Rester was public because it was expressed to governing members of a local community group, Concerned Citizens

of St. Tammany. Further, the speech related to matters which may affect the community such as the mismanagement of ambulance operations and fire protections. Finally, it is of note that Plaintiff not only expressed his concerns with Sicard as Fire Chief, but also invited Franzo and Rester to Sicard's disciplinary hearing which was required to be open to the public.[24] *See* La. Rev. Stat. § 33:2561(B)(1). Thus, Plaintiff's speech to citizens who may potentially be affected by Sicard's actions, or failure to act, is public rather than private. Accordingly, this factor weighs heavily in favor of finding that Plaintiff's speech with Franzo and Rester was on a matter of public concern and entitled to First Amendment protection. *See Gibson II*, 838 F.3d at 487.

### iii.    Form

Finally, the form of Plaintiff's speech also weighs in favor of protection. As noted by the Fifth Circuit in *Modica v. Taylor*, "though not dispositive," informing persons outside of the normal chain of command of an employment grievance weighs supports the contention that the speech was public. 565 F.3d 174, 181 (5th Cir. 2006) (citing cases where the Fifth Circuit has held that not notifying persons outside of the typical employee-employer chain of command weighs in favor of finding the speech as an employee grievance and private). Here, Plaintiff expressed his concern with

---

[24] Both parties agree that Sicard's disciplinary hearing was open to the public.

Sicard's actions and inactions to members of the public who were also members of an organization which seeks to represent the people of St. Tammany parish. Accordingly, this factor weighs in favor of finding that Plaintiff's speech was on a matter of public concern and entitled to protection.

### iv. Summary

Considering the content, context, and form of Plaintiff's speech to Franzo and Rester, the Court finds that the communication was primarily on a matter of public concern in all aspects.[25] However, in order to state a claim for First Amendment retaliation, Plaintiff must have also suffered an adverse employment action. *Hitt*, 301 F.3d at 246. As explained above, Defendant Lober's notice of investigation to Plaintiff does not constitute an adverse employment action. *See supra*, Section (1). Accordingly, Plaintiff's First Amendment freedom of speech retaliation claim, as it relates to his communication with Franzo and Rester, against Defendant Lober is dismissed.

### 3. Whether Defendant Sicard is Entitled to Qualified Immunity

Defendant Sicard argues he is entitled to qualified immunity even if Plaintiff's speech was on a matter of public concern. Understandably, Plaintiff's complaint did not address Defendants'

---

[25] Even if the form of Plaintiff's speech with Franzo and Rester was private, the Court finds that both the content and context of the speech was public. And in mixed-speech cases such as this, the context of a plaintiff's speech weighs heavily in determining whether such speech is on a matter of public concern. *See Gibson II*, 838 F.3d at 487.

qualified immunity defense. But "in the Fifth Circuit, to survive a motion to dismiss a Section 1983 claim against an individual, the plaintiff must 'allege the particular facts forming the basis of his claim, including those preventing [the individual defendant] from successfully maintaining a qualified immunity defense.'" *Wilson v. Tangipahoa Pub. Sch. Bd.*, No. 13-271, 2013 WL 3733471, at *3 (E.D. La. July 15, 2013) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994-95 (5th Cir. 1995)). "The Fifth Circuit has stated that it would be unfair to require a plaintiff to anticipate the qualified immunity defense when drafting a complaint." *Safford v. St. Tammany Par. Life Protection Dist. No. 1*, No. 2-0055, 2004 WL 614498, at *2 (E.D. La. Mar. 26, 2004) (citing *Shultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995)). "Accordingly, the [Fifth Circuit has] designed a unique pleading procedure to manage such cases." *Id.* (citing *Schultea*, 47 F.3d at 1433-34). "First, a plaintiff is required to file a short and plain statement of his complaint relying on more than mere conclusions." *Id.* "A district court may then, in its discretion, insist that a plaintiff file a reply specifically responding to the defendant's qualified immunity defense." *Id.* (citing *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995)). "Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." *Id.* (citing *Schultea*, 47 F.3d at 1434; *Reyes*

*v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (noting that when faced with sparse details of claimed wrongdoing by officials, trial courts should "routinely" require plaintiffs to file a reply under Rule 7(a) to qualified immunity defenses)).

Plaintiff's complaint does not allege any facts to defeat Defendants' qualified immunity defense. But here, rather than file an answer to Plaintiff's complaint, Defendants immediately filed a motion to dismiss pursuant to Rule 12(b)(6).[26] From the facts currently alleged in Plaintiff's complaint, the Court finds that a reply tailored to Sicard's qualified immunity defense would be beneficial. As explained above, the Court has already determined that Plaintiff's First Amendment freedom of association and freedom of speech retaliation claims against Defendant Lober are dismissed. However, the Court determined that Plaintiff has stated a First Amendment freedom of speech retaliation claim against Defendant Sicard as it relates to Plaintiff's communication with Franzo and Rester. Accordingly, Plaintiff is granted leave to file an amended complaint solely addressing Defendant Sicard's qualified immunity defense and Plaintiff's communications with Franzo and Rester. *See Schultea*, 47 F.3d at 1434 ("Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when

---

[26] *See* R. Docs. 11, 12, 14.

greater detail might assist."); *see also Payne v. City of Hammond*, No. 15-1022, 2016 WL 1031341, at *12 (E.D. La. Mar. 15, 2016) (citing *Hawk*, 72 F.3d 320) ("*Schultea* makes it clear that this two-step process—requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity."); *Wilson*, 2013 WL 3733471, at *7 (granting the plaintiff leave to amend his complaint to address the defendant's qualified immunity defense where plaintiff had not previously been granted the opportunity amended, and the complaint was not "simply incurable").

### 4. Plaintiff's State Law Claim

Plaintiff's complaint alleges that Defendants' violated Louisiana Revised Statute § 23:822, and Plaintiff "seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and compensation, damages, benefits, equitable and other relief under 42 U.S.C. §1983, and under state law."[27] Defendants only argues that Plaintiff's claim for monetary damages pursuant to Louisiana Revised Statute § 23:822 should be dismissed. Plaintiff has clarified that he only seeks injunctive relief pursuant to §

---

[27] R. Doc. 1.

23:822.[28] Accordingly, to the extent that Plaintiff sought monetary damages pursuant to § 23:822, that claim is dismissed.[29]

## CONCLUSION

Accordingly,

   **IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss* **(R. Doc. 14)** is **GRANTED IN PART and DENIED IN PART**. Specifically, Plaintiff's First Amendment freedom of association and freedom of speech retaliation claims against Defendant Lober are **DISMISSED WITH PREJUDICE**. Plaintiff's First Amendment freedom of speech retaliation claim, as it relates to Plaintiff's May 2016 union letter, against Defendant Sicard is also **DISMISSED WITH PREJUDICE**. However, Plaintiff's First Amendment freedom of speech retaliation claim, as it relates to Plaintiff's communication with Rick Franzo and Cindy Rester, against Defendant Sicard is not dismissed.

   **IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint solely addressing Defendant Sicard's qualified immunity defense and Plaintiff's communications with Franzo and Rester. Plaintiff's amended complaint must be filed within **thirty-days (30)** from the entry of this order. Defendants

---

[28] R. Doc. 18 at 18-19.
[29] It appears that injunctive relief is permissible for a violation of Louisiana Revised Statute § 23:822. *See Lindberg v. Bossier Par., La.*, No. 7-641, 2008 WL 4491642, at *7 (W.D. La. Oct. 2, 2008) ("[Louisiana Revised Statute § 23:822] merely declares that it is against public policy to restrict labor and union activity and allows a court to enjoin unlawful activity."). Defendants have not moved to dismiss Plaintiff's § 23:822 claim for injunctive relief.

may then file a responsive pleading within **ten (10) days** of Plaintiff's amended complaint.

     **IT IS FURTHER ORDERED** that to the extent that Plaintiff sought monetary damages pursuant to Louisiana Revised Statute § 23:822, that claim is **DISMISSED WITH PREJUDICE**.

     New Orleans, Louisiana this 12th day of May, 2017.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE